UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TINA M. BLUNDELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 1:15-CV-67 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Tina Blundell appeals the denial by the Social Security Administration of supplemental security income benefits. Blundell claims the ALJ made several errors. But because I find that the ALJ improperly failed to discuss a specific Listing and did not address an important pulmonary function test, I **REVERSE** the ALJ's decision and **REMAND** on this issue.

**Background**

Because this case must be remanded on the issue relating to Blundell's asthma and chronic obstructive pulmonary disease ("COPD"), I will concentrate my discussion of the facts to that issue. In May 2011, Blundell's primary physician prescribed Albuterol and Symbicort for her asthma and COPD. (R. 289-90.)[1] By January 2012,

---

[1] Citations to the record will be indicated as "R. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

Blundell's physician prescribed Albuterol through a nebulizer as needed, up to every four to six hours. (R. 270.)

On July 18, 2012, Blundell underwent pulmonary function testing. This was precipitated by a diagnosis made a month earlier by an emergency room physician that Blundell was suffering from COPD and bronchitis. (R. 387.) The pulmonary functioning test includes a component called the one-second forced expiratory volume test, or "$FEV_1$" which measures the ability of a claimant to move air in and out of her lungs. Specifically, the $FEV_1$ measures the amount of air that a person can breathe out in one second after taking a deep breath and blowing out as hard as they can. Measurements are taken both before and after the person inhales a bronchodilator (which increases airflow to the lungs). Blundell claims that her testing resulted in a best pre-test $FEV_1$ of .68 and best post-test of .63. (DE 17 at 15; R. 307.) This pulmonary function test is at the heart of this appeal. As discussed below, there is some discrepancy in the medical record as to whether Blundell was administered a bronchodilator before the second round of breathing tests. Regardless, the interpretation of the test was "[s]evere obstruction and low vital capacity possibly due to restriction," reflecting a lung age of 107 years. (R. 307.)

About a month after her pulmonary function test, Blundell had another appointment with her doctor. The doctor noted Symbicort and Albuterol as her current medications and gave her a sample of a Spiriva Inhaler. (R. 400.) Blundell testified at the hearing before the ALJ that she used a nebulizer anywhere from two to six times a

2

day, and used a rescue inhaler as well. (R. 50-51.)

## Discussion

For Blundell to be eligible for SSI benefits under the Social Security Act, she must establish that she is disabled. This means she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A).

There is a five step process that is used to determine whether a person applying for benefits is disabled. Only one of those steps — step three — is germane to this case. At step three a person is presumed to be disabled if she has an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments. These "Listing of Impairments" are set out in 20 C.F.R. § 404, Subpt. P. The task at step three is to compare the claimant's impairments with the "list of impairments presumed severe enough to preclude any gainful work." *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004).

The ALJ in this case determined that Blundell was not disabled and my task is to determine, using deferential review, whether that finding is supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

There is no question, as the ALJ correctly found, that Blundell suffers from several severe impairments: asthma, obesity, lumbar degenerative disc disease, depression, and borderline intellectual functioning. (R. 12.) The question is whether those severe impairments meet the Listing of Impairments in the Social Security regulations. The ALJ evaluated Blundell's claim under the Listings 1.04 (disorders of the spine), 3.03 (asthma), and mental impairments (12.02, 12.04, and 12.05), and found that no Listings were met. (R. 13.) Blundell argues that the ALJ erred in not mentioning Listing 3.02A, and incorrectly ignored the pulmonary test described above that on the face of it appears to qualify Blundell for benefits.

Respiratory disorders and the listings used to evaluate them include COPD (3.02), and asthma (3.02 or 3.03). 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.00. The ALJ identified Listing 3.03 at issue for asthma, but he never discussed whether Blundell met Listing 3.02 for COPD. At Step 3, the ALJ determined that Blundell's asthma did not meet Listing 3.03 "because there is no evidence of chronic asthmatic bronchitis or attacks in spite of prescribed treatment requiring physician intervention and occurring at least every 2 months or at least six times a year." (R. 13.)

There are two ways to find a disability under 3.03 (asthma). Under 3.03A, for a claimant with "chronic asthmatic bronchitis," an ALJ must "[e]valuate under the criteria for chronic obstructive pulmonary disease in 3.02A." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.03. "The requirements of 3.02A (and therefore 3.03A) are met if the claimant's $FEV_1$ is equal to or less than the value depicted on a chart that correlates to

4

the claimant's height." *Johnson v. Astrue*, 2012 WL 4471607, at * 9 (N.D. Ind. Sept. 26, 2012) ; *see* 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.02A, Table 1. The other route to find a disability under 3.03 for asthma is Listing 3.03B, which requires attacks occurring at least once every 2 months or at least 6 times a year. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.03.

The problem with the ALJ's findings is his conclusion that "there is no evidence of chronic asthmatic bronchitis." (R. 17.) What makes this problematic is the ALJ's failure to address Blundell's pulmonary function test. Recall that Blundell took a pulmonary function test in July 2012. That very test is used by the Social Security Administration in Listing 3.02 (chromic pulmonary insufficiency), and, by relation, 3.03A (chronic asthmatic bronchitis). As noted above, there is a table that correlates the claimant's height without shoes to a $FEV_1$ number. If the $FEV_1$ number is at or below the threshold $FEV_1$ number for her height, then the claimant qualifies for disability benefits under that Listing. *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

The required $FEV_1$ level for Blundell's height of 62 inches is 1.15. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.02A. Blundell claims that her testing resulted in a best $FEV_1$ of .68 before the administration of medication and .63 after the administration of medication, which would thus meet the requirements of the pertinent Listing. But there is something amiss about these tests. When I look at the test results, there is a table that does indeed list her best pre-test $FEV_1$ number as .68 and post-test number (after medicine) as .63. (R. 307.) However, on the preceding page, it shows "n/a" for the

bronchodilator name and "n/a" for dosage, and that the "best post-bronchodilator FEV$_1$" was also "n/a." (R. 306.) Under the regulations, a post-bronchodilator test occurs only if the patient meets the threshold of having a pre-bronchodilator FEV$_1$ value that is "less than 70 percent of the predicted normal value." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.00E. Here, Blundell's pre-test indicates that it was 25% of the predicted normal value (R. 307), but it is unclear in this case whether a bronchodilator was actually given to Blundell after the first set of tests. The regulations provide that "[i]f a bronchodilator is not administered, the reasons should be clearly stated in the report," and that "[p]ulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.00E. There is no notation of whether a bronchodilator was contraindicated. (R. 306-07.)

Aside from the issue of whether post-bronchodilator testing was actually conducted, the test results themselves should be met with some degree of skepticism. A bronchodilator, by definition, is a drug that increases the volume of the lungs. It is therefore odd that Blundell's FEV$_1$ test score listed in the table indicates that her pre-test score was *higher* than her post-test score. This could perhaps mean that Blundell wasn't using her best efforts during the testing process.

But while there may well be something fishy about the pulmonary testing done on Blundell, it is neither here nor there for present purposes. This is because my task is

6

to determine whether the ALJ confronted this evidence, and if he did, whether he adequately explained why he rejected it. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Ridgway v. Colvin*, No. 2:14-CV-105-TLS, 2016 WL 1567254, at *4-5 (N.D. Ind. Apr. 19, 2016); *McDowell v. Colvin*, No. 3:12-cv-723, 2014 WL 1094905, at *12-13 (N.D. Ind. Mar. 18, 2014); *Johnson v. Barnhart*, 66 F. App'x 285, 288-89 (3d Cir. 2003). Here, the ALJ entirely disregarded the pulmonary function test.

This case is remarkably similar to *Johnson v. Astrue*, in which Judge DeGuilio was also presented with a pulmonary function test where the claimant got a $FEV_1$ number of 1.34 before the bronchodilator and .11 after the bronchodilator. *Johnson*, 2012 WL 4471607, at *9. Judge DeGuilio faulted the ALJ because he:

> did not even address the test results, or compare the results and the claimant's height to the table. To the contrary, he noted that he found "no evidence suggesting a different conclusion is more appropriate" than the one he reached, indicating that he did not consider the $FEV_1$ figures at all. Plainly this evidence *does* suggest a different conclusion.

*Id.* (emphasis in original). Judge DeGuilio noted that "[i]n the end, there may be good reasons for finding the results of the claimant's pulmonary function test incredible, especially as compared to the medical experts' opinions" and recognized the possibility that the second exhalation may not have been an honest effort. *Id.* Nevertheless, Judge DeGuilio reiterated the basic point that an ALJ must explain why he rejected a piece of evidence because the failure to do so makes it difficult for the reviewing court to determine whether the ALJ properly rejected the evidence, or even considered it at all.

7

*Id.* It is for this reason that the ALJ's failure to confront significant contrary evidence warrants remand. *Golambiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

The same is true here. The ALJ should have addressed Listing 3.02 and discussed whether Blundell's test results supported a finding that 3.02 or 3.03 was met. The ALJ committed reversible error when he disregarded the pulmonary test results and gave no explanation as to whether he considered them. *Brindisi ex rel Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("Without even a mention, we are left to wonder whether the [test] was even considered. Here the ALJ should have discussed not only the results of the [test], but also whether those results meet the requirement of [the] listing . . . .").

Nothing in *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004), a case relied upon by the government, commands a different result. The government cites to *Jones* for the proposition that $FEV_1$ test results alone are insufficient to support a claim of disability. (DE 22 at 6.) It is true that the $FEV_1$ should not be considered in isolation in assessing whether a claimant has a Listed impairment. However, in *Jones*, the ALJ expressly considered the pulmonary function studies and analyzed them along with other medical evidence in finding that the claimant's asthma was only mild. *Id.* This case is much closer to *Jury v. Colvin*, where the district court ordered a remand because the ALJ "entirely failed to discuss the results of the pulmonary function testing in connection with the requirements for listing 3.02(C)." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *6-7 (M.D. Penn. Mar. 14, 2014).

8

The Government also quotes *Thacker v. Commissioner of Social Security.*, 93 F. App'x 725, 728 (6th Cir. 2004), which found that "only one [$FEV_1$] maneuver was performed. Therefore, this rating is insufficient to satisfy listing 3.02A." In *Thacker*, the claimant only did one forced maneuver (in other words, they only blew out once). *Id.* However, a proper test should record 3 forced maneuvers, and record the largest of at least 3 trials. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.00E. In this case, Blundell did do 3 trials, and they are all noted on the chart, including the best result. (R. 307.)

Finally, Blundell argues in a footnote that the ALJ should have also analyzed Blundell's FVC scores as well. (DE 17 at 20 n. 76.) While the $FEV_1$ measures the volume of air you exhale in the first second of the forced expiratory maneuver, the total volume of air that you exhale during the entire maneuver is the FVC. *Barber v. Commissioner of Social Security*, No. 3:13-cv-110, 2014 WL 4706865, at *4 n. 6 (S.D. Ohio Sept. 22, 2014). The highest $FEV_1$ value evaluates a respiratory disorder under 3.02A and 3.03A; and the highest FVC value evaluates a respiratory disorder under 3.02B. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 3.00E. Blundell's FVC results are located on the same table as the $FEV_1$. (R. 307.) On remand, the ALJ should also consider the FVC results, along with the other medical evidence in the record, when deciding whether Blundell has a listing level impairment.

Ultimately, I'm not sure if Blundell's respiratory issues render her disabled. Yet the case law is clear that the ALJ should have discussed whether Blundell met Listing 3.02 and should have confronted the respiratory tests. In sum, I remand this case so the

ALJ can analyze the pulmonary tests in assessing whether Blundell's respiratory impairment meets or equals a listed impairment at Step 3.

Having already determined that remand is necessary, I find no compelling reason to address each of Blundell's other arguments in detail. However, I do note that it seems like the ALJ properly recognized Blundell's obesity and mental health and gastrointestinal impairments, considered the evidence, and provided a thorough discussion on these issues.

**Conclusion**

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**SO ORDERED**.

ENTERED: August 5, 2016

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
